Joseph J. Tabacco, Jr. (75484)
Email: jtabacco@bermanesq.com
Nicole Lavallee (165755)
Email: nlavallee@bermanesq.com
Julie J. Bai (227047)
Email: jbai@bermanesq.com
**BERMAN DeVALERIO PEASE TABACCO**
  **BURT & PUCILLO**
425 California Street, 21st Floor
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382

**Attorneys for Proposed Lead Plaintiff Louisiana Municipal Police Employees' Retirement System**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HCL PARTNERS LIMITED PARTNERSHIP, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAP WIRELESS INTERNATIONAL, INC., S. DOUGLAS HUTCHESON, DEAN M. LUVISA, AMIN I. KHALIFA and PRICEWATERHOUSECOOPERS LLP,<br><br>Defendants. | No. 07-CV-02245-BTM-NLS<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM TO CONSOLIDATE RELATED ACTIONS, FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**<br><br>DATE:  March 28, 2008<br>TIME:  11:00 a.m.<br>CTRM:  15, 5th Fl.<br><br>PER CHAMBERS, NO ORAL ARGUMENT UNLESS REQUESTED BY COURT |

**CAPTION CONTINUES ON NEXT PAGE**

| | |
|---|---|
| FRANK CHAREK, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAP WIRELESS INTERNATIONAL, INC., S. DOUGLAS HUTCHESON, MARK H. RACHESKY, AMIN I. KHALIFA, GLENN UMETSU and DEAN M. LUVISA,<br><br>Defendants. | No. 07-CV-2256-BTM-NLS<br><br><u>CLASS ACTION</u> |
| DEVAY CAMPBELL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAP WIRELESS INTERNATIONAL, INC., S. DOUGLAS HUTCHESON, MARK H. RACHESKY, AMIN I. KHALIFA, GLENN UMETSU and DEAN M. LUVISA,<br><br>Defendants. | No. 07-CV-2297-BTM-NLS<br><br><u>CLASS ACTION</u> |
| KENT CARMICHAEL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEAP WIRELESS INTERNATIONAL, INC., S. DOUGLAS HUTCHESON, MARK H. RACHESKY, AMIN I. KHALIFA, and DEAN M. LUVISA,<br><br>Defendants. | No. 08-CV-0128-BTM<br><br><u>CLASS ACTION</u> |

[07cv02245] MPA ISO MTN FOR CONSOLIDATION AND APPT AS LEAD PLAINTIFF

# **TABLE OF CONTENTS**

I.  INTRODUCTION AND BACKGROUND OF THE ACTION ..............................................1

ARGUMENT.........................................................................................................................2

    A.  THE RELATED ACTIONS SHOULD BE CONSOLIDATED ....................................2

    B.  MPERS SHOULD BE APPOINTED LEAD PLAINTIFF BECAUSE IT IS THE "MOST CAPABLE OF ADEQUATELY REPRESENTING THE INTERESTS OF CLASS MEMBERS"...................................................................................5

        1.  The Legal Requirements Under The PSLRA ...........................................................5

        2.  Notice Of Pendency ................................................................................................6

        3.  MPERS Is The Presumptive Lead Plaintiffs Because It Has The Largest Financial Interest In The Relief Sought By The Class" As Determined Under the PSLRA .................................................................................................7

            a.  MPERS Has The Largest Losses Among Any Of The Applicants For Lead Plaintiff Status    7

            b.  As An Institutional Investor, MPERS Is Preferred As Lead Plaintiff Under The PSLRA    7

    C.  MPERS SATISFIES THE REQUIREMENTS OF RULE 23........................................9

        1.  MPERS' Claims Are Typical of the Claims of the Class .........................................9

        2.  MPERS Will Fairly and Adequately Represent the Interests of the Class ..............10

    D.  THE COURT SHOULD APPROVE MPERS' SELECTION OF LEAD COUNSEL ...11

CONCLUSION.......................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Armour v. Network Associates, Inc.,* 171 F. Supp. 2d 1044 (N.D. Cal. 2001) ..................9

*Borenstein v. Finova Group, Inc.*, No. CIV 00-619-PHX-SMM, 2000 U.S. Dist. LEXIS 14732
   (D. Ariz. Aug. 28, 2000) ........................................................................................9

*Danis v. USN Communs., Inc.,* 189 F.R.D. 391 (N.D. Ill. 1999)......................................11

*Gluck v. CellStar Corp.,* 976 F. Supp. 542 (N.D. Tex. 1997)...........................................9

*Hanlon v. Chrylser Corp.,* 150 F. 3d 1011 (9th Cir. 1998) ............................................10

In re Cavanaugh, 306 F.3d 726 (9th Cir. 2002).................................................6, 10, 12

*In re Network Assocs. Sec. Litig.,* 76 F. Supp. 2d 1017 (N.D. Cal. 1999).........................9

*In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.,* 693 F.2d 847
   (9th Cir. 1982)....................................................................................................11

*In re Surebeam Corp. Sec. Litig.,* 2003 U.S. Dist. LEXIS 25022 (S.D Cal. Dec. 31, 2003)......10, 11

*In re Unumprovident Corp. Sec. Litig.*, No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633
   (E.D. Tenn. Nov. 6, 2003) ....................................................................................9

*In re Vicuron Pharms. Inc. Sec. Litig.,* 225 F.R.D. 508 (E.D. Pa. 2004) ..........................9

*Investors Research Co. v. United States Dist. Court for the Cent. Dist.,* 877 F.2d 777
   (9th Cir. 1989).....................................................................................................3

*Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507 (9th Cir. 1978) ...........................11

*Plumbers and Pipefitters Local 51 Pension Fund v. Petco Animal Suppliers, Inc.,*
   No. 05-CV-823 H (RBB), 2005 U.S. Dist. LEXIS 45908 (S.D. Cal. Aug. 16, 2005)....................7

*Ruland v. Infosonics Corp.,* No. 06cv1231, 2006 U.S. Dist. LEXIS 79144
   (S.D. Cal. Oct. 23, 2006) .........................................................................3, 8, 10, 12

*Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx),
   2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 2, 2006) ............................................10

*Siegall v. Tibco Software, Inc.,* No. C 05-2146, 2006 U.S. Dist. LEXIS 26780
   (N.D. Cal. Feb. 24, 2006)....................................................................................4, 5

*Southwest Marine Inc. v. Triple A Machine Shop, Inc. ,* 720 F. Supp. 805
   (N.D. Cal. 1989)...................................................................................................4

*Takeda v. Turbodyne Techs., Inc.,* 67 F. Supp. 2d 1129 (C.D. Cal. 1999) .................................4, 11

**Statutes**

15 U.S.C. § 78u-4(a)(1) ..............................................................................................................5

15 U.S.C. § 78u-4(a)(3)(A)(i) .....................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(i) .....................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................6, 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...........................................................................................6, 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) .......................................................................................12

15 U.S.C. § 78u-4(a)(3)(B)(v) ...................................................................................................12

FED. R. CIV. P. 23(a)(3) .............................................................................................................10

Fed. R. Civ. P. 23(a)(4) .............................................................................................................11

Fed. R. Civ. P. 42(a) ...............................................................................................................3, 5

1995 U.S.C.C.A.N. 679 ..............................................................................................................8

Louisiana Municipal Police Employees' Retirement System ("MPERS") respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Consolidate Related Actions, for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel.

## I.   INTRODUCTION AND BACKGROUND OF THE ACTION

On November 27, 2007, HCL Partners Limited Partnership filed a class action in this Court on behalf of public investors who purchased the securities of Leap Wireless International, Inc., a wireless communications carrier, ("Leap" or the "Company") between May 16, 2004 and November 9, 2007 (the "Class Period").[1] This complaint named as defendants Leap Wireless International, Inc., S. Douglas Hutcheson, Dean M. Luvisa, Amin I. Khalifa and PriceWaterhouseCoopers LLP. Since then, three additional related class actions have been filed in this Court asserting essentially identical claims against the Company and certain current and former officers and directors. These three complaints allege class periods of (i) January 7, 2005 to November 9, 2007; (ii) January 7, 2005 through November 8, 2007; and (iii) November 10, 2005 through November 8, 2007.

These complaints generally allege that defendants issued a series of false and misleading statements in violation of federal securities laws. The first-filed complaint, *HCL Partners Limited Partnership v. Leap Wireless International, Inc. et al.*, No. CV-02245-BTM-NLS (the "*HCL* Action"), alleges defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) (the "Exchange Act") and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, by making materially false and misleading statements regarding the Company's business and prospects which artificially inflated the value of Leap stock. More specifically, the complaint alleges that defendants made material misrepresentations and omissions

---

[1] The law firm of Schoengold Sporn Laitman & Lometti, P.C., issued an announcement on November 27, 2007, which set forth a Class Period that began on May 16, 2004 and ran through November 9, 2007. *See* Exhibit 1 to the Declaration Of Nicole Lavallee In Support Of The Louisiana Municipal Police Employees' Retirement System's Motion For Consolidation Of Related Actions, Appointment As Lead Plaintiff And Approval Of Lead Counsel ("Lavallee Decl."). It issued a correction on November 28, 2007 announcing that the action was brought on behalf of all purchasers of Leap securities during the period between May 16, 2005 through November 9, 2007 (the "November 28, 2007 Press Release"). *See* Exhibit 2 to the Lavallee Decl.

of fact regarding the Company's revenues beginning in fiscal year 2004 and continuing through the second quarter of fiscal 2007. The complaint further alleges that Leap misstated its financial results for the Class Period because the Company incorrectly accounted for a group of customers who voluntarily disconnected service and that the Company also erred in its accounting relating to the timing and recognition of certain service revenues and operating expenses in regard to its customers.

Before the market opened on November 9, 2007, Leap announced that it would restate its financial results for fiscal year 2004, 2005 and 2006 and for the first and second quarters of 2007 to correct for errors in previously reported service revenues, equipment revenues and operating expenses. The Company further stated that its "previously issued financial statements for periods from fiscal year 2004 through the second quarter of 2007 should not be relied upon." The November 9 announcement revealed that "[o]ver these periods, the restatements are expected to result in a net cumulative reduction of approximately $20 million in service and approximately $20 million in operating income."

As a result of this disclosure, Leap's stock closed at $36.72 per share, declining 37% from the previous trading day's close of $58.10, on very heavy trading volume of 11,377,500 shares, over six times the prior trading day's volume.

During the Class period, MPERS purchased 8,300 shares in Leap securities and suffered losses of approximately $132,375 as a result of defendants' fraud. *See* Exhibit A to the Certification Of R. Randall Roche In Support Of The Motion Of Louisiana Municipal Police Employees' Retirement System For Appointment As Lead Plaintiff, a copy of which is attached as Exhibit 3 to the Lavallee Decl., and Lavallee Decl., Exh. 4.

## ARGUMENT

### A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Under Federal Rule of Civil Procedure 42(a), this Court has broad discretion to consolidate cases on its docket. FED. R. CIV. P. 42(a) (providing that "when actions involving common questions of law or fact are pending before the court, it . . . may order all the actions consolidated[.]"); *see also Investors Research Co. v. U. S. Dist. Court for the C.D. Cal.*, 877 F.2d

777, 777 (9th Cir. 1989) ("The district court has broad discretion under [Rule 42(a)] to consolidate cases pending in the same district."). "Consolidation is appropriate when there is a 'common question of law or fact . . . pending before the Court.'" *Ruland v. Infosonics Corp.*, No. 06cv1231, 2006 U.S. Dist. LEXIS 79144, at *4 (S.D. Cal. Oct. 23, 2006) (Moskowitz, J.) (citation omitted) (cases were consolidated where actions covered same time period, arose out of the same facts and alleged violations of the securities laws.). *See also Siegall v. Tibco Software, Inc*., No. C 05-2146, 2006 U.S. Dist. LEXIS 26780, at **5-6 (N.D. Cal. Feb. 24, 2006) ("[T]he Private Securities Litigation Reform Act ("PSLRA") directs that cases should be consolidated when more than one action is filed on behalf of a class asserting substantially the same claim or claims.").

Upon establishing that common questions of law exist, "a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *Southwest Marine Inc. v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989). Securities class actions are particularly appropriate for consolidation. *See Takeda v. Turbodyne Techs., Inc*., 67 F. Supp. 2d 1129, 1130 (C.D. Cal. 1999) (stating that securities class actions should be consolidated "in the interest of judicial economy and to relieve the parties and absent class members of the burdens associated with participating in duplicative litigation ….").

The following related actions should be consolidated by the Court:

| Name & Case No. | Date Complaint Filed | Judge Assigned |
|---|---|---|
| *HCL Partners Limited Partnership v. Leap Wireless Int'l, Inc. et al,* 07-CV-02245-BTM-NLS (*"HCL* Action") <br><br> Alleged Class Period: May 16, 2004 through November 9, 2007 <br><br> Corrected Class Period: May 16, 2005 through November 9, 2007 (per November 28, 2007 Press Release) | November 27, 2007 | Honorable Barry Ted Moskowitz |

[07cv2245] MPA ISO MTN FOR CONSOLIDATION AND APPT AS LEAD PLAINTIFF    3

| Name & Case No. | Date Complaint Filed | Judge Assigned |
|---|---|---|
| *Charek v. Leap Wireless Int'l, Inc. et al.*, 07-CV-02256-BTM-NLS ("*Charek* Action")<br><br>Class Period: January 7, 2005 through November 8, 2007 | November 29, 2007 | Honorable Barry Ted Moskowitz |
| *Campbell v. Leap Wireless Int'l, Inc. et al.*, 07-CV-02297-BTM-NLS ("*Campbell* Action")<br><br>Class Period: January 7, 2005 through November 9, 2007 | December 7, 2007 | Honorable Barry Ted Moskowitz |
| *Carmichael v. Leap Wireless Int'l, Inc. et al.*, 08-CV-0128-BTM ("*Carmichael* Action")<br><br>Class Period: November 10, 2005 through November 8, 2007 | January 23, 2007 | Honorable Barry Ted Moskowitz<br><br>(Transferred January 28, 2008) |

Consolidation is necessary because these actions have the same core defendants: Leap, S. Douglas Hutcheson, Amin I. Khalifa, and Dean M. Luvisa. Mark Rachesky is a defendant in the *Charek*, *Campbell* and *Carmichael* Actions. Glenn Umetsu is a defendant in two of the actions, the *Charek* and *Campbell* Actions. PricewaterhouseCoopers, LLP is a defendant in the *HCL* Action. The complaints also allege the same bases for liability: Sections 10(b) and 20(a) of the Exchange Act. Further, each of these actions alleges that defendants made materially false statements during the Class Period about Leap's financial and business condition, which in turn artificially inflated the market price for Leap securities. While the various plaintiffs have alleged slightly different class periods, their claims arise out of the same alleged wrongdoing as revealed in the Company's November 9, 2007 press release. In light of the common questions of law and fact and, in the interests of promoting judicial efficiency and conservation of resources, consolidation of these related actions is appropriate under FED. R. CIV. P. 42(a). *See Siegall*, 2006 U.S. Dist. LEXIS 26780, at *5 ("The purpose of consolidation is to avoid unnecessary costs or delays that would ensue from proceeding separately with claims or issues sharing common aspects of law or fact.").

**B.     MPERS SHOULD BE APPOINTED LEAD PLAINTIFF BECAUSE IT IS THE "MOST CAPABLE OF ADEQUATELY REPRESENTING THE INTERESTS OF CLASS MEMBERS"**

### 1.     The Legal Requirements Under The PSLRA

The PSLRA, 15 U.S.C. § 78u-4(a)(1), sets forth procedures for the appointment of lead plaintiffs to oversee class actions brought under the Exchange Act. Within 20 days after the date on which a class action is filed under the PSLRA, *see* 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class: (i) of the pendency of the action, the claims asserted therein, and the purported class period; and (ii) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiffs filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person, or group of persons, that:

> (aa)    has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002). The presumption established above may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either 1) "will not fairly and adequately protect the interests of the class," or 2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Ninth Circuit Court has explained that the "Reform Act provides a simple three-step process for identifying the lead plaintiff" pursuant to the criteria set forth in the PSLRA. *See In re Cavanaugh*, 306 F.3d at 729-30. As *Cavanaugh* instructed:

> The first step consists of publicizing the pendency of the action, the claims made and the purported class period. In step two, the district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the "presumptively most adequate plaintiff" – and hence the presumptive lead plaintiff – the one who "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy." If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff. If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23. The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements.

*Id.* (alteration in original) (internal citations and footnotes omitted). *See also Plumbers and Pipefitters Local 51 Pension Fund v. Petco Animal Suppliers, Inc.*, No. 05-CV-823 H (RBB), 2005 U.S. Dist. LEXIS 45908, at **6-12 (S.D. Cal. Aug. 16, 2005).

### 2. Notice Of Pendency

Plaintiff in the *HCL* Action, the first-filed action, caused an initial notice to be published on *Market Wire* on November 27, 2007 and a corrected notice to be published on November 28, 2007 (in which it set forth the Class Period as May 16, 2005 through November 9, 2007 rather than May 16, 2004 through November 9, 2007). *See* Exhibits 1 and 2 to the Lavallee Decl. The notice announced that a securities class action had been filed against the defendants herein, and advised purchasers of Leap securities that they had sixty days from November 27, 2007 to seek lead plaintiff status. *See Id.* MPERS has filed this motion before the expiration of the 60-day period from such publication.

In addition, and pursuant to the requirements of the PSLRA, MPERS has duly signed a certification stating that it is familiar with the factual and legal issues alleged and is willing to serve as representative plaintiff on behalf of the Class. *See* Lavallee Decl. Exh. 3.

       **3.     MPERS Is The Presumptive Lead Plaintiffs Because It "Has The Largest Financial Interest In The Relief Sought By The Class" As Determined Under the PSLRA**

           **a.     MPERS Has The Largest Losses Among Any Of The Applicants For Lead Plaintiff Status**

As noted above, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the "person" or "group of persons" who "has the largest financial interest in the relief sought by the class," and who also satisfies the requirements of Rule 23 of the FED. R. CIV. P. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). *See also Ruland*, 2006 U.S. Dist. Lexis 79144, at *6 ("The presumptively most adequate plaintiff is the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 . . . .'"). This presumption of adequacy may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. at ** 6-7 *citing* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

During the alleged class periods, MPERS purchased 8,300 shares in Leap securities and suffered losses of approximately $132,375. *See* Lavallee Decl., Exhs. 3 and 4. MPERS believes that its investment in Leap securities and its losses from such investments are greater than those of all other qualified movants seeking appointment as lead plaintiff. Therefore, MPERS has the largest financial interest in the relief sought by the Class.

           **b.     As An Institutional Investor, MPERS Is Preferred As Lead Plaintiff Under The PSLRA**

In passing the PSLRA, Congress expressed a clear preference for institutional investors to lead securities class action lawsuits. *See* H. R. CONFERENCE REPORT ON SECURITIES LITIGATION REFORM, S. REP. NO. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts …. [and] believes that an institutional investor acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors."); *Gluck v. CellStar*

*Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("[T]hrough the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors."); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) (*cert. denied*, *In re Network Assocs. Sec. Litig.*, No. C 99-01729 WHA, 1999 U.S. Dist. LEXIS 21484 (N.D. Cal. Nov. 22, 1999)) ("Congress expected that the lead plaintiff would normally be an institutional investor with a large stake in the outcome."); *Armour v. Network Associates, Inc.*, 171 F. Supp. 2d 1044, 1051 (N.D. Cal. 2001) ("As an institutional investor with a large financial stake in the outcome of this litigation, Louisiana Teachers 'is exactly the type of lead plaintiff envisioned by Congress when it instituted the lead plaintiff requirements.'") (citation omitted).[2]

It is understandable that institutional investors are preferred as lead plaintiffs in securities class actions since they understand the role of fiduciaries and possess the financial sophistication, expertise, experience and resources to ensure that counsel will prosecute the litigation in the best interests of the class. Furthermore, institutional investors have leverage to stand up for the class in order to ensure that counsel actively and properly represents the class, and they have the strength and position to demand the best recovery from defendants.

Here, MPERS is exactly the type of institutional investor Congress envisioned would lead securities class actions when it passed the PSLRA. It is a sophisticated institutional investor that has significant financial expertise, it possesses substantial resources, it understands the complexities of securities litigation and it has experience with managing class actions. MPERS manages approximately $1.3 billion in net assets. *See* Lavallee Decl., Exh. 3, ¶ 2. MPERS

---

[2] *See also Borenstein v. Finova Group, Inc.*, No. CIV 00-619-PHX-SMM, 2000 U.S. Dist. LEXIS 14732, at **28-29 (D. Ariz. Aug. 28, 2000) (appointing an institutional investor rather than a group of individual investors with a larger stake in the litigation because it "will satisfy the Congressional goal of increasing the role of institutional investors as the managers of securities class actions."); *In re Unumprovident Corp. Sec. Litig.*, No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633, at *17 (E.D. Tenn. Nov. 6, 2003) ("The reasoning behind Congress' preference for institutional investors was based on an understanding of institutional investors and other large shareholders as better able to advance the interests of the class as a whole and effectively monitor the plaintiffs' attorneys."); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) ("Under the PSLRA, institutional investors are considered preferred lead plaintiffs. The Conference Committee Report states that the PSLRA sought 'to increase the likelihood that institutional investors will serve as lead plaintiffs.'") (citations omitted).

manages the pension and benefit funds of approximately 10,000 employee members, retirees and beneficiaries. *See* Lavallee Decl., Exh. 3, ¶ 2. MPERS is currently serving as lead plaintiff or co-lead plaintiff in several securities class actions. *See* Lavallee Decl., Exh. 3, ¶ 7. Thus, MPERS, as an institutional investor, has the qualifications to assume to role Lead Plaintiff in this securities class action litigation against Leap.

### C.  MPERS SATISFIES THE REQUIREMENTS OF RULE 23

The PSLRA requires that the lead plaintiff must satisfy the requirements of Rule 23 of the FED. R. CIV. P. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to the claims of class representatives, Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the class. For purposes of a motion to appoint lead plaintiff pursuant to the PSLRA, however,

> the prospective lead plaintiff need only make a prima facie showing that it meets the typicality and adequacy factors.

*Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *16 (C.D. Cal. May 2, 2006) (citation omitted); *In re Surebeam Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 25022, *16 (S.D Cal. Dec. 31, 2003), *citing Cavanaugh*, 306 F.3d at 731 ("Although Rule 23 contains four basic requirements . . . a presumptive lead plaintiff need only make a 'preliminary showing' of typicality and adequacy. At this stage, the district court is to rely on the presumptive lead plaintiff's complaint and sworn certification.").

#### 1.  MPERS' Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." FED. R. CIV. P. 23(a)(3). *See also Ruland*, 2006 U.S. Dist. LEXIS 79144, at * 17, *quoting Hanlon v. Chrylser Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1998) ("Claims are 'typical' under Rule 23 if they are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'"). Indeed, the "similarity of legal theory may control even where factual distinctions

exist between the claims of the named representative and the other class members." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).

Here, MPERS has satisfied the typicality requirement of Rule 23 because it (1) purchased or acquired Leap stock on the open market during each of the proposed class periods[3]; (2) at prices artificially inflated by the false and misleading statements and/or omissions by defendants; and (3) suffered damages as a result. Thus, MPERS' claims are substantially similar, if not identical, to those of other class members who invested in Leap stock during the alleged Class Periods and sustained losses resulting from the alleged misrepresentations.

### 2.  MPERS Will Fairly and Adequately Represent the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Accordingly,

> The Ninth Circuit has held that representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absence [sic] class members, and it is unlikely that the action is collusive.

*Takeda*, 67 F. Supp. 2d at 1137 (*citing In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)). *Accord Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). *See also Surebeam*, 2003 U.S. Dist. LEXIS 25022, at *16 (adequacy of representation contains two factors: "1) that the representative party's attorney be qualified, experienced and generally able to conduct the litigation; and 2) that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class."). The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Takeda*, 67 F. Supp. 2d at 1137.

MPERS meets the adequacy requirement. It has demonstrated that it will effectively manage this litigation and will vigorously represent the interests of all Class members. Specifically, (1) MPERS' interests are aligned with, and not adverse to those of the Class; (2) it has obtained qualified and experienced counsel as discussed in the next section; and (3) it has

---

[3] MPERS' trading is the same for all of the purported class periods.

submitted a certification indicating that it is willing to assume the responsibilities of a class representative.

### D.   THE COURT SHOULD APPROVE MPERS' SELECTION OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court.   15 U.S.C. § 78u-4(a)(3)(B)(v); *Ruland*, 2006 U.S. Dist. LEXIS 79144 at *18 ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.'").  The Court should only interfere with lead plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). *See also In re Cavanaugh*, 306 F.3d at 732-33.

Here, MPERS has selected the law firm Berman DeValerio Pease Tabacco Burt & Pucillo to serve as Lead Counsel.  Berman DeValerio is highly-experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors.  Further, counsel has the skill and knowledge that will enable them to prosecute this action effectively and expeditiously.  *See* Lavallee Decl., Exh. 5.  Most notably, Berman DeValerio has presented MPERS in a number of securities class actions.  Thus, MPERS is familiar with the Firm's ability to represent classes in such actions.  For these reasons, the Court may be assured that by approving MPERS' choice of Lead Counsel, the Class will receive the highest caliber of legal representation.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## CONCLUSION

MPERS respectfully requests that the Court consolidate the above-captioned related actions, appoint MPERS as Lead Plaintiff, approve its selection of Berman DeValerio Pease Tabacco Burt & Pucillo to serve as Lead Counsel, and grant such other relief as the Court may deem to be just and proper.

Dated: January 28, 2008

**BERMAN DeVALERIO PEASE
TABACCO BURT & PUCILLO**

By:   /s/ Nicole Lavallee
      NICOLE LAVALLEE

Joseph J. Tabacco, Jr.
Julie J. Bai
425 California Street,
Suite 2100
San Francisco, CA 94104-2205
Telephone: 415-433-3200

**Attorneys for Proposed Lead Plaintiff Louisiana Municipal Police Employees' Retirement System**